UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | No. 16-mc-19 (WMW/FLN) |
| Petitioner, | |
| v. | **REPORT AND** |
| Martin S. Azarian, | **RECOMMENDATION** |
| Respondent. | |

Michael Pahl for Petitioner.
Eric William Johnson for Respondent.

**THIS MATTER** came before the undersigned United States Magistrate Judge on Petitioner Internal Revenue Service's ("IRS") Petition to enforce an IRS administrative summons (ECF No. 1) and motion for an order to show cause why an IRS summons should not be enforced (ECF No. 2). The Court issued an Order to show cause on March 21, 2016 and a hearing was held on April 29, 2016. Order, ECF No. 5. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that the IRS's Petition be **DENIED**.

**I. FINDINGS OF FACT**

On July 13, 2015, as part of an investigation into the tax liabilities of Respondent Martin S. Azarian for tax years 2012 and 2013, Revenue Agent Andrew Harris served an administrative summons on Azarian requesting the production of books, papers, records, or other data.[1] Harris

---

[1] While the summons demanded that Azarian appear to testify on August 17, 2015, the IRS only seeks to enforce the summons as it pertains to "documents the government reasonably believes fall within the foregone-conclusion exception." Reply Mem. 9,

Decl. ¶¶ 2–3, 6, Ex. 1, ECF No. 4. In a sworn affidavit, Azarian states that he has "provided the Internal Revenue Service with [his] complete business and personal financial documentation as requested to substantiate income and expenses, including all credit card statements, bank statements, cancelled checks, investment statements, invoices, receipts, etc." Azarian Aff. ¶ 5, ECF No. 8. Nonetheless, the IRS claims that Azarian has not fully complied with the summons and requests "a copy of the electronic backupfile of the Quicken or other business and financial software used to generate reports . . . includ[ing] the underlying accounting records for the period from January 1, 2012 through December 31, 2013[;] [t]he username and password for the electronic backup file[;] [and p]rinouts of the reports."[2] Harris Supp. Decl. ¶ 11, ECF No. 12.

Azarian is an attorney whose firm, Martin S. Azarian, P.A., is organized as an S-corporation. ECF No. 8 ¶ 2. As the sole owner of an S-corporation, Azarian is personally responsible for all tax liability. *Id.* ¶ 3. The administrative summons at issue is directed to him, not to the S-corporation. *Id.* ¶¶ 2–3; ECF No. 4, Ex. 1. According to Azarian, he charges clients a flat fee and therefore his gross income is substantiated by his bank deposits. Resp. to Pet. 2, ECF No. 6. In addition, he states that because he has no depreciable assets, all of his expenses are substantiated by his current-year expenditures. *Id.* Azarian hired accountant Jerry Gould at Foreman & Airhardt Ltd. to prepare and file his initial tax returns for tax years 2012 and 2013. ECF No. 12 ¶ 3. During the course of the audit and investigation, Gould gave Revenue Agent Harris a report ("the Gould Report") that

---

ECF No. 11.

[2] To the extent that Azarian objects to the administrative summons as being unenforceably vague, the Court assumes without deciding that the summons is not vague. ECF No. 7 at 3–4. Furthermore, any needed clarification has been offered by Revenue Agent Harris in his supplemental declaration. ECF No. 12.

includes typewritten and handwritten notes from Azarian that Gould used to prepare the initial returns. *Id.* Based on the Gould Report, the IRS argues that Azarian has not turned over all responsive materials to the summons.

As part of the audit, Azarian hired CPA Tom Lamey to prepare and file new income tax returns for 2012 and 2013. ECF No. 8 ¶ 6; Lamey Aff., ECF No. 9. The IRS states that the new returns are not signed, and that without the outstanding materials it has requested, the IRS is unable to determine whether the newly-prepared income tax returns are correct. ECF No. 12 ¶ 9. Azarian argues that the act of production would compel him to admit to the existence and authenticity of the requested materials in contravention of his Fifth Amendment right against self-incrimination. ECF No. 7 at 3–5. At the hearing, Azarian's counsel represented that there is approximately a $100,000 discrepancy in income for each tax year between the initial tax returns and the tax returns that were filed after the audit. The IRS has been clear that it does not intend to offer Azarian immunity for any potential criminal charges. However, the IRS argues that because it has not referred this matter to the Justice Department or sought to criminally prosecute Azarian, Azarian does not have a real or appreciable fear of incrimination. Reply Mem. 5, ECF No. 11.

## II. LEGAL ANALYSIS

The IRS's power to administer and enforce the Internal Revenue Code includes the authority to investigate suspected violations, examine materials relevant to its investigation, take testimony, and issue summonses. 26 U.S.C. § 7601. These summonses are not self-enforcing and may require judicial enforcement. 26 U.S.C. §§ 7402(b), 7604. To obtain judicial enforcement of a summons, the IRS must make a *prima facie* showing that: (1) the investigation will be conducted pursuant to a legitimate purpose, (2) the inquiry is relevant to that purpose, (3) the information sought is not

already within the IRS's possession, and (4) the administrative steps have been followed. *United States v. Powell*, 379 U.S. 48, 57–58 (1964). The IRS may establish this *prima facie* showing through an affidavit of an IRS agent affirming good-faith compliance with the summons requirements. *United States v. Norwood*, 420 F.3d 888, 892 (8th Cir. 2005). Here, the IRS put forward the affidavit of Revenue Agent Harris in support of its Petition. ECF No. 4. The Court concludes that this affidavit satisfies the IRS's *prima facie* requirement.

After the IRS makes its *prima facie* case, the taxpayer bears the heavy burden of showing either that the requirements have not been satisfied or that enforcement of the summons would be an abuse of the Court's process. *Powell*, 379 U.S. at 58 ("It is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused. Such an abuse would take place if the summons had been issued for an improper purpose."). Enforcement of a summons in violation of an individual's constitutional rights would be an improper purpose. *Id.*

The Fifth Amendment ensures that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Fifth Amendment "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444–45 (1972). In *United States v. Fisher*, a taxpayer asserted a Fifth Amendment privilege to a subpoena seeking his accountant's work papers used in preparation of his tax returns. 425 U.S. 391 (1976). The U.S. Supreme Court held that the content of the papers was not covered by privilege because the taxpayer was not compelled to create the documents in the first place. *Id.* Moreover, because under the facts of that case "[t]he existence and location of the papers [were] a foregone

conclusion," the taxpayers Fifth Amendment rights were not implicated by the act of production. *Id.* at 411. In other words, while the content of documents are not protected by the Fifth Amendment privilege, the act of producing the documents under some circumstances may be protected. *Id.* The Supreme Court clarified *Fisher* in *United States v. Doe*, where it held that the act of producing documents can have testimonial aspects by communicating the existence, possession and control, and the authenticity of the documents. 465 U.S. 605, 613 (1984).

The Eighth Circuit has likewise held that "the act of producing documents would not involve testimonial self-incrimination [where] the existence of the documents, their possession . . . , and their authenticity were already established and within the knowledge of the IRS." *United States v. Rue*, 819 F.2d 1488, 1490 (8th Cir. 1987). In *United States v. Rue*, the Eighth Circuit determined that the existence of the materials summoned by the IRS was not a foregone conclusion unless the "IRS can independently authenticate [the summoned materials] without using [the taxpayer's] act of producing the cards as evidence of their authenticity." *Id.* at 1494. Similarly in *In re Grand Jury Proceedings*, a summons was invalidated where the summons requested all documents regarding financial transactions of the taxpayers and/or the business entity they owned for the tax years under investigation. 41 F.3d 377, 378 (8th Cir. 1994). The court held that compliance with a broad sweeping subpoena requires the taxpayer to discriminate, and thereby provide authenticity to and admit to the existence of the documents. *Id.* at 381.

In *United States v. Stevenson*, this court invalidated a summons requesting a broad list of records and documents, holding that the act of production was subject to Fifth Amendment protection. No. 09-mc-74 (PJS/FLN), 2011 WL 1559414 at *1 (D. Minn. April 22, 2011). There, the IRS argued that: (1) where the IRS has not initiated criminal proceedings, Stevenson did not

have a reasonable fear that his production of the documents will later be used against him in a criminal proceeding; and (2) where a summons is written broadly, the IRS has shown that possession of any one particular document is a foregone conclusion. *Id.* at *1–2. The court rejected these arguments. *Id.*

In this case, the summons was directed to Azarian personally and not to his S-corporation. ECF No. 4, Ex. 1. The summons requested all "books, records, papers, and other data relating to the tax liability or the collection of the tax liability" with an attachment requesting the specific production of:

> 1. Any books and records were [sic] kept in electronic format including, but not limited to, a copy of the original electronic file of the electronic books and records that includes the period from 1/1/2012 through 12/31/2013. This copy should not be an altered version of the data but rather a copy of the original electronic file.
>
> 2. The administrator's user name and password for the file requested in item 1 above.
>
> 3. Any books and records were [sic] kept in paper format including, but not limited to, a copy of the original books and records that includes the period from 1/1/2012 through 12/31/2013. The original books and records should include, but is [sic] not limited to, the following items:
>     a. Cash receipts journal (record of business income).
>     b. Cash disbursements journal (record of business expenses).
>     c. Monthly bank reconciliations.
>     d. General ledger and any subsidiary ledgers, if applicable.
>     e. All journal entries, including adjusting and closing entries.

*Id.* Azarian affirms that he has turned over all responsive material in his possession. ECF No. 8. ¶ 5. Revenue Agent Harris, however, demands Azarian's username and password, backup files, and unredacted report from whatever program, likely Quicken software, that may have generated the Gould Report. ECF No. 12 ¶ 11. In reliance on the Gould Report, the IRS argues that it is a foregone conclusion that contemporaneous bookkeeping reports exist, and that Azarian does not have a Fifth

Amendment privilege to turning over such materials because he has no real and appreciable fear of criminal prosecution.

As an initial matter, the Court concludes that Azarian retains a Fifth Amendment privilege against self-incrimination in this case. The *Stevenson* court already rejected the IRS's contention that where the IRS has not initiated criminal proceedings, a taxpayer being investigated does not have a reasonable fear that his production of the documents will later be used against him in a criminal proceeding. *See Stevenson*, 2011 WL 1559414 at *1–2. Azarian's attorney has admitted that there is a $100,000 discrepancy between his initial and current tax returns for the 2012 and 2013 tax years. In this case, just as in *Stevenson*, Azarian has a reasonable fear that any documents produced in response to the summons may later be used against him in a criminal proceeding. The IRS has made clear that it does not intend to extend any form of immunity to Azarian. His act of production could therefore be used against him should a criminal proceeding be initiated in the future. Azarian has also illustrated that he is being investigated as an individual taxpayer as opposed to acting as a custodian of an S-corporation. Azarian personally holds a Fifth Amendment privilege against compelled self-incrimination.

The only issue remaining in this case is whether the Gould Report renders the existence of any contemporaneous electronic internal bookkeeping—and thereby the backup files, username and password, and generated reports—a foregone conclusion for which Azarian may not assert his Fifth Amendment privilege. *Fisher*, 425 U.S. at 411; *Rue*, 819 F.2d at 1490. The analysis hinges on whether the IRS can authenticate the materials underlying the Gould report without Azarian's act of production. *Rue*, 819 F.2d at 1494 (because the authenticity of the documents at issue—patient cards—can be established independently, without reference to the taxpayer's act of producing them,

7

their authenticity is a "foregone conclusion").

The Court concludes that here, unlike in *Rue*, because Azarian has demonstrated that the IRS could not authenticate the requested materials independently, without reference to Azarian's act of production, the authenticity of the summoned materials is not a foregone conclusion. Therefore, compelling Azarian to produce and authenticate the materials would compel him to incriminate himself in violation of his Fifth Amendment right.

The Gould Report is dated March 21, 2013 and appears to catalog some of Azarian's income and expenses, including typewritten and handwritten margin notes and calculations. ECF No. 12, Ex. 1. Gould received the Gould Report from Azarian as is. ECF No. 12 ¶ 11. The IRS admits that the Gould Report could not be a complete recording of Azarian's income and expenses because it does not include any income earned in September through December 2013. ECF No. 11 at 2. Contrary to the IRS's argument that the Gould Report renders the existence of any underlying documents of contemporaneous bookkeeping a foregone conclusion, Azarian correctly asserts that the only way for the IRS to know that the underlying documents exist is if he authenticates them through his act of production. The existence of the summoned materials, therefore, is not a foregone conclusion.

The IRS has made its *prima facie* case that its administrative summons should be judicially enforced, thereby shifting the heavy burden to Azarian to prove that enforcement of the administrative summons would be an abuse of the Court's process. Azarian has met his burden by showing that the materials summoned by the IRS would be an abuse of the Court's process in that it would compel him to produce and authenticate documents in contravention of his Fifth Amendment right against self-incrimination.

### III. RECOMMENDATION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the IRS's Petition (ECF No. 1) to enforce the IRS administrative summons be **DENIED**.

DATED: May 18, 2016                                    *s/Franklin L. Noel*
                                                                              FRANKLIN L. NOEL
                                                                              United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **June 1, 2016**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **June 1, 2016** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.